**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

CHLOE S.A.S.,

        Plaintiff,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

        Defendants.

                           /

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff, Chloe S.A.S. ("Plaintiff"),[1] hereby sues Defendants, the Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A" hereto (collectively "Defendants"). Defendants are promoting, advertising, offering for sale, selling, and/or distributing goods bearing and/or using counterfeits and confusingly similar imitations of Plaintiff's trademarks within this district through various Internet based e-commerce stores operating under the seller names set forth on Schedule "A" (the "E-commerce Store Names"). In support of its claims, Plaintiff alleges as follows:

**JURISDICTION AND VENUE**

1.      This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject

---

[1] Plaintiff is a subsidiary of Compagnie Financière Richemont SA, which is one of the world's leading luxury goods groups.

matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2. Each Defendant is subject to personal jurisdiction in this district because each Defendant directs business activities toward and conducts business with consumers throughout the United States, including within the State of Florida and this district through, at least, e-commerce stores accessible and doing business in Florida and operating under the E-commerce Store Names. Alternatively, based on their overall contacts with the United States, each Defendant is subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, non-residents in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## <u>THE PLAINTIFF</u>

4. Plaintiff, Chloe S.A.S., is a company organized and existing under the laws of France, having its principal place of business at 5/7 Avenue Percier, 75008 Paris, France.

5. Plaintiff's products are marketed and sold throughout the United States and worldwide, including within this district, through a network of carefully selected, authorized Chloe online retailers, high-end dealers and boutiques, and at prestigious department stores. Plaintiff is engaged in the business of manufacturing and distributing throughout the world, including within

this district, a variety of high-quality goods under multiple world-famous common law and federally registered trademarks, including those set forth below. Plaintiff offers for sale and sells its trademarked goods within the State of Florida, including this district, through its boutiques, at prestigious retailers, and via the Internet on its own websites. Defendants, through the advertising, offering for sale, and sale of counterfeit and infringing versions of Plaintiff's branded products are directly and unfairly competing with Plaintiff's economic interests in the United States, including within the State of Florida, and causing Plaintiff irreparable harm and damage within this jurisdiction.

6.      Like many other famous trademark owners, Plaintiff suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiff's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores. The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with Plaintiff's name and associated trademarks and the destruction of the legitimate market sector in which it operates.

7.      To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Plaintiff expends significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires companies, such as Plaintiff, to expend significant resources across a wide spectrum of efforts to protect both consumers and it from confusion and erosion of the goodwill embodied in Plaintiff's brand.

**THE DEFENDANTS**

8.      Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of, at least, their commercial Internet based e-commerce stores under the E-commerce Store Names.

9.      Upon information and belief, Defendants use aliases in conjunction with the operation of their businesses.

10.      Defendants are the past and/or present controlling forces behind the sale of products bearing and/or using counterfeits and infringements of Plaintiff's trademarks as described herein.

11.      Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and/or selling goods each bearing and/or using counterfeits and infringements of one or more of Plaintiff's trademarks to consumers within the United States and this district through e-commerce stores using, at least, the E-commerce Store Names, as well as additional e-commerce store or seller identification aliases not yet known to Plaintiff. Defendants have purposefully directed some portion of their unlawful activities toward consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing versions of Plaintiff's branded goods into the State of Florida.

12.      Defendants have registered, established or purchased, and maintained their E-commerce Store Names. Defendants may have engaged in fraudulent conduct with respect to the

4

registration or maintenance of the E-commerce Store Names by providing false and/or misleading information to the relevant e-commerce platforms where they offer to sell and/or sell.

13.     Defendants will likely continue to register or acquire new e-commerce store names or other aliases, as well as related payment accounts, for the purpose of offering for sale and/or selling goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Plaintiff's trademarks unless enjoined.

14.     Defendants' E-commerce Store Names, associated payment accounts, and any other alias e-commerce store or seller identification names used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of Plaintiff's trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff. Moreover, Defendants are using Plaintiff's famous name and associated trademarks to drive Internet consumer traffic to at least one of their e-commerce stores operating under the E-commerce Store Names, thereby increasing the value of the E-commerce Store Names and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff's Business and Trademark Rights

15.     Plaintiff is the owner of all rights, title, and interest in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Plaintiff's Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| **Chloé** | 0,950,843 | January 16, 1973 | IC 025 – Ladies' articles of clothing for outerwear-, namely, frocks, dresses, coats, skirts, blouses, vests; vests, and ladies' shoes |
| CHLOE | 1,491,810 | June 14, 1988 | IC 018 – Handbags, purses<br><br>IC 025 – Bathrobes, bathing suits, coats, dresses, hats, jackets, shirts, blouses, trousers, skirts, scarves, shoes |
| **SEE BY CHLOE** | 2,641,982 | October 29, 2002 | IC 018 – Travelling bags, holdalls, tote bags, handbags, credit card case; purses, wallets, key cases, coin purses, parts and fittings for all the aforesaid goods<br><br>IC 025 – Clothing, namely, trousers, skirts, dresses, jackets, shirts, coats, cardigans, sweaters, blouses, shorts, t-shirts, pullovers |
| **Chloé** | 3,291,996 | September 11, 2007 | IC 018 – Goods made of leather and imitations of leather, namely, handbags, purses, credit card cases and holders, key cases, coin purses |

Plaintiff's Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for Plaintiff's Marks are attached hereto as Composite Exhibit "1."

16.     Plaintiff's Marks have been used in interstate commerce to identify and distinguish Plaintiff's high-quality goods for an extended period of time.

17.     Plaintiff's Marks have been used in commerce by Plaintiff long prior to Defendants' use of copies of those Marks. Plaintiff's Marks have never been assigned or licensed to any Defendant in this matter.

6

18.    Plaintiff's Marks are symbols of Plaintiff's quality, reputation and goodwill and have never been abandoned. Plaintiff has carefully monitored and policed the use of Plaintiff's Marks.

19.    Plaintiff's Marks are well known and famous and have been for many years. Plaintiff expends substantial resources developing, advertising and otherwise promoting Plaintiff's Marks and products bearing and/or using Plaintiff's Marks. Plaintiff's Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

20.    Plaintiff extensively uses, advertises and promotes Plaintiff's Marks in the United States in association with the sale of high-quality goods.

21.    As a result of Plaintiff's efforts, Plaintiff's Marks have acquired fame in the consumer market for a wide variety of products.

22.    Plaintiff's Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning as an identifier of high-quality goods.

23.    Genuine goods bearing and/or using Plaintiff's Marks are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet.  Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Plaintiff's overall marketing and consumer education efforts. Thus, Plaintiff expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies. Those strategies allow Plaintiff and its authorized retailers to educate consumers fairly and legitimately about the value associated with Plaintiff's brand, the goods sold thereunder, and the problems associated with the counterfeiting of Plaintiff's trademarks.

**Defendants' Infringing Activities**

24.     Defendants are each promoting, advertising, distributing, offering for sale, and/or selling goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of one or more of Plaintiff's Marks (the "Counterfeit Goods") through at least the e-commerce stores operating under the E-commerce Store Names. Specifically, Defendants are each using one or more of Plaintiff's Marks to initially attract online consumers and drive them to Defendants' e-commerce stores operating under the E-commerce Store Names. Defendants are each using virtually identical copies of one or more of Plaintiff's Marks for different quality goods. Plaintiff has used its trademarks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's genuine approved products.

25.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiff's genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, offering for sale and/or selling substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiff despite Defendants' knowledge that they are without authority to use Plaintiff's Marks.  Defendants' actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in or through Defendants' e-commerce stores are genuine goods originating from, associated with, and/or approved by Plaintiff.

26.     Defendants each advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores using, at least, the E-commerce Store Names. In so doing, Defendants each improperly and unlawfully use one or more of Plaintiff's Marks without Plaintiff's permission.

27. Defendants are each concurrently employing and benefiting from substantially similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of Plaintiff's Marks. Specifically, Defendants are each using counterfeits and infringements of Plaintiff's famous name and Plaintiff's Marks to make their e-commerce stores selling unauthorized goods appear more relevant and attractive to consumers searching for both Plaintiff's and non-Plaintiff's goods and information online. By their actions, each Defendant is jointly contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods. Defendants are each causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's Marks by viewing inferior products in either the pre or post sale setting, and/or, (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand via the Internet.

28. Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.  As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

29. At all times relevant hereto, Defendants have had full knowledge of Plaintiff's ownership of Plaintiff's Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

30.     Defendants' use of Plaintiff's Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

31.     Defendants are engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.  If Defendants' intentional counterfeiting and infringing activities are not enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

32.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, each Defendant's wrongful conduct is likely to create a false impression and deceive consumers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

33.     Given the visibility of Defendants' various e-commerce stores and the similarity of their concurrent actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Plaintiff and the overall consumer market in which they operate because of Defendants' concurrent actions.

34.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Plaintiff.

35.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive

10

activities connected to their E-commerce Store Names and any other alias e-commerce store names being used and/or controlled by them.

36.     Further, each Defendant, upon information and belief, is likely to transfer or secrete its assets to avoid payment of any profits awarded to Plaintiff.

37.     Plaintiff has no adequate remedy at law.

38.     Plaintiff is suffering irreparable injury and has suffered substantial damages because of Defendants' unauthorized and wrongful use of Plaintiff's Marks. If each Defendant's intentional counterfeiting and infringing and unfairly competitive activities are not enjoined by this Court, Plaintiff and the consuming public will continue to be harmed while each Defendant wrongfully earns a substantial profit.

39.     The harm and damages sustained by Plaintiff has been directly and proximately caused by each Defendant's wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of its Counterfeit Goods.

## COUNT I – TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

40.     Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 39 above.

41.     This is an action for trademark counterfeiting and infringement against each Defendant based on its use of counterfeit and confusingly similar imitations of one or more of Plaintiff's Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and/or sale of the Counterfeit Goods.

42.     Defendants are each promoting and otherwise advertising, selling, offering for sale, and/or distributing goods bearing and/or using counterfeits and/or infringements of one or more of Plaintiff's Marks. Defendants are each continuously infringing and inducing others to infringe

11

Plaintiff's Marks by using one or more of Plaintiff's Marks to advertise, promote, offer to sell, and/or sell counterfeit and infringing versions of Plaintiff's branded goods.

43. Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the consuming public as to the origin and quality of Defendants' Counterfeit Goods.

44. Defendants' individual and concurrent unlawful actions have caused and are continuing to cause unquantifiable damages and irreparable harm to Plaintiff and are unjustly enriching each Defendant with profits at Plaintiff's expense.

45. Each Defendant's above-described unlawful actions constitute counterfeiting and infringement of Plaintiff's Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

46. Plaintiff has suffered and will continue to suffer irreparable injury and damages while Defendants are each earning a substantial profit due to their above-described activities if Defendants are not enjoined.

**COUNT II – FALSE DESIGNATION OF ORIGIN**
**PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

47. Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 39 above.

48. Each Defendant's Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of Plaintiff's Marks have been widely advertised and offered for sale throughout the United States via the Internet.

49. Each Defendant's Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of Plaintiff's Marks are virtually identical in appearance to Plaintiff's genuine goods. However, each Defendant's Counterfeit Goods are different in quality.

Accordingly, each Defendant's activities are likely to cause confusion among consumers as to at least the origin or sponsorship of its Counterfeit Goods.

50.    Defendants have each used in connection with their advertisement, offers for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and designs that falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

51.    Defendants have each authorized infringing uses of one or more of Plaintiff's Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.

52.    Additionally, each Defendant is simultaneously using counterfeits and infringements of one or more of Plaintiff's Marks to unfairly compete with Plaintiff and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Plaintiff of valuable marketing and educational space online which would otherwise be available to Plaintiff, and (ii) reducing the visibility of Plaintiff's genuine goods on the World Wide Web and across social media platforms.

53.    Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

54.    Plaintiff has no adequate remedy at law and has sustained both individual and indivisible injury and damages caused by each Defendant's individual and concurrent conduct. Absent entry of an injunction by this Court, Plaintiff will continue to suffer irreparable injury to

13

its goodwill and business reputation, as well as monetary damages, while each Defendant is earning a substantial profit.

## COUNT III – COMMON LAW UNFAIR COMPETITION

55. Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 39 above.

56. This is an action against each Defendant based on its promotion, advertisement, distribution, offering for sale, and/or sale of goods bearing and/or using marks that are virtually identical to one or more of Plaintiff's Marks in violation of Florida's common law of unfair competition.

57. Specifically, each Defendant is promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements of one or more of Plaintiff's Marks. Each Defendant is also using counterfeits and infringements of one or more of Plaintiff's Marks to unfairly compete with Plaintiff and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.

58. Each Defendant's infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of that Defendant's e-commerce store(s) as a whole and all products sold therein by its use of Plaintiff's Marks.

59. Plaintiff has no adequate remedy at law and has suffered and will continue to suffer irreparable injury and damages because of each Defendant's individual and concurrent actions while each Defendant is unjustly profiting due to its above-described activities if not enjoined.

### COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

60.     Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 39 above.

61.     Plaintiff is the owner of all common law rights in and to Plaintiff's Marks.

62.     This is an action for common law trademark infringement against each Defendant based on its promotion, advertisement, offering for sale, and sale of its Counterfeit Goods bearing and/or using one or more of Plaintiff's Marks.

63.     Specifically, each Defendant is promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of Plaintiff's Marks.

64.     Each Defendant's infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of that Defendant's Counterfeit Goods bearing and/or using Plaintiff's Marks.

65.     Plaintiff has no adequate remedy at law and has suffered and will continue to suffer irreparable injury and damages because of each Defendant's individual and concurrent actions while each Defendant is unjustly profiting due to its above-described activities if not enjoined.

### PRAYER FOR RELIEF

66.     WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against each Defendant as follows:

a.      Entry of a permanent injunction pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining each Defendant, its agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting,

distributing, selling or offering to sell counterfeit goods; from infringing, counterfeiting, or diluting Plaintiff's Marks; from using Plaintiff's Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of any Defendant as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of any Defendant are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of Plaintiff's Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by any Defendant; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent any Defendant's goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademarks and from otherwise unfairly competing with Plaintiff.

   b.      Entry of an injunction pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority enjoining each Defendant and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, each Defendant in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of Plaintiff's Marks.

   c.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiff's request, those acting in concert or participation as

service providers to any Defendant, who have notice of the injunction, shall disable and/or cease hosting, facilitating access to, or providing any supporting service to any and all e-commerce stores, including but not limited to the E-commerce Store Names, through which any Defendant engages in the promotion, offering for sale and/or sale of goods bearing and/or using counterfeits and/or infringements of Plaintiff's Marks.

d.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, any Internet marketplace and social media website operators, administrators, registrars, and/or top level domain (TLD) Registries for the E-commerce Store Names and any other alias e-commerce store names being used by any Defendant who are provided with notice of an injunction issued by the Court, shall disclose to Plaintiff the true identity and contact information, including any e-mail address known to be associated with each Defendant's respective E-commerce Store Name(s).

e.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. §1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiff's request, each Defendant and the top level domain (TLD) Registry for each of the E-commerce Store Names, or their administrators, including backend registry operators or administrators, place the E-commerce Store Names, and any other e-commerce store names being used and/or controlled by any Defendant to engage in the business of marketing, offering to sell, and/or selling goods bearing and/or using counterfeits and infringements of the Plaintiff's Marks, on Registry Hold status for the remainder of the registration period for any such e-commerce store, thus removing them from the TLD zone files that link the E-commerce Store Names, and any other e-commerce store names used by any Defendant to the IP addresses where the associated e-commerce store names are hosted.

17

f.        Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority canceling for the life of the current registration or, at Plaintiff's election, transferring the E-commerce Store Names and any other e-commerce store names used by any Defendant to engage in its counterfeiting of Plaintiff's Marks to Plaintiff's control so they may no longer be used for unlawful purposes.

g.        Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority authorizing Plaintiff to request any Internet search engines or service provider referring or linking users to any Uniform Resource Locator ("URL") of the E-commerce Store Names, which are provided with notice of the order, to permanently disable, de-index or delist all URLs of the E-commerce Store Names and/or permanently disable the references or links to all URLs of the E-commerce Store Names used by any Defendant to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of Plaintiff's Marks, based upon that Defendant's unlawful activities being conducted via the E-commerce Store Names as a whole and via any specific URLs identified by Plaintiff.

h.        Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring each Defendant, its agent(s) or assign(s) to assign all rights, title, and interest, to its E-commerce Store Names, and any other e-commerce store names used by that Defendant, to Plaintiff and, if within five (5) days of entry of such order that Defendant fails to make such an assignment, the Court order the act to be done by another person appointed by the Court at that Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

i.        Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring each Defendant, its agent(s) or assign(s) to instruct in writing all search engines to

permanently delist or deindex the E-commerce Store Name(s), and any other e-commerce store names used by that Defendant, and, if within five (5) days of entry of such order that Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at that Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

j.       Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring each Defendant, its agent(s) or assign(s) to instruct the Registrar for each E-commerce Store Name in writing to permanently close the registration account(s) in which any E-commerce Store Name is located and, if within five (5) days of entry of such Order any Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at that Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

k.       Entry of an order requiring, upon Plaintiff's request, each Defendant to request in writing permanent termination of any messaging services, E-commerce Store Names, usernames, e-commerce stores, and social media accounts it owns, operates, or controls on any messaging service, e-commerce marketplace, or social media website.

l.       Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Plaintiff to serve an injunction issued by the Court on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses that are used by any Defendant in connection with that Defendant's promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits and/or infringements of Plaintiff's Marks.

19

m.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Plaintiff to serve the injunction on the e-commerce store's registrar(s) and/or the privacy protection service(s) for the E-commerce Store Names to disclose to Plaintiff the true identities and contact information for the registrants of the E-commerce Store Names.

n.      Entry of an order requiring each Defendant to account to and pay Plaintiff for all profits and damages resulting from that Defendant's trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117, or that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

o.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

p.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Plaintiff's request, each Defendant and any financial institutions, payment processors, banks, escrow services, money transmitters, e-commerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, and their related companies and affiliates, identify, restrain, and be required to surrender to Plaintiff all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Names or any other alias e-commerce store names used by each Defendant presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer

funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

q.      Entry of an order requiring each Defendant, at Plaintiff's request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of that Defendant's products, including without limitation, the placement of corrective advertising and providing written notice to the public.

r.      Entry of an award of pre-judgment interest on the judgment amount.

s.      Entry of an order for any further relief as the Court may deem just and proper.

DATED: March 23, 2026.                  Respectfully submitted,

                                        STEPHEN M. GAFFIGAN, P.A.

                                        By:     **Stephen M. Gaffigan**
                                        Stephen M. Gaffigan (Fla. Bar No. 025844)
                                        Virgilio Gigante (Fla. Bar No. 082635)
                                        T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
                                        401 East Las Olas Blvd., # 130-453
                                        Ft. Lauderdale, Florida 33301
                                        Telephone: (954) 767-4819
                                        E-mail: Stephen@smgpa.cloud
                                        E-mail: Leo@smgpa.cloud
                                        E-mail: Raquel@smgpa.cloud

                                        Attorneys for Plaintiff

## SCHEDULE "A"

**[This page is the subject of Plaintiff's Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**